UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BANK OF AMERICA, N.A. § § *Plaintiff* § § v. § § M/V MARINE PRINCESS, her engines, Tackle, appurtenances, etc., § *in rem* § § and § § SUNSET SHIPPING LTD., § *in personam* § § *Defendants* § § | CIVIL ACTION NO. 21-CV-559 G(3) |

## VERIFIED COMPLAINT IN INTERVENTION

The Plaintiff-Intervenor, AMS Ameropa Marketing & Sales AG ("AMS"), submits this Intervening Complaint against the M/V MARINE PRINCESS, her engines, boilers, tackle, equipment, apparel, appurtenances, etc., *in rem*, and against Sunset Shipping Ltd. *in personam*, stating an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and respectfully represents the following upon information and belief.

## PARTIES

1. Plaintiff-Intervenor, AMS is a company organized under the laws of Switzerland, with a registered office at Rebgasse 108, Binningen, 4102, Switzerland.

2. Defendant, M/V MARINE PRINCESS (the "Vessel"), is a Marshall Islands flagged bulk carrier of approximately 172.95 meters in length and 30 meters in breadth, with gross

tonnage of 23,452 tons, and IMO Number 9621041. At all relevant times, the Vessel has been engaged in international commerce and is owned by Sunset Shipping.

3. Defendant, Sunset Shipping LTD ("Sunset Shipping"), is and was a Marshall Islands company with a registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960.

4. Plaintiff, Bank of America ("BOA"), is and was a company organized under the laws of the United States, with a registered office at 100 North Tryon Street, Charlotte, NC 28255.

## JURISDICTION

5. This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court pursuant to the general maritime law and 28 U.S.C. § 1333, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

## BACKGROUND

6. The plaintiff in this matter, BOA, has petitioned this Court to enforce a lien *in rem* against the Vessel, to arrest the property of Sunset Shipping pursuant to a preferred ship mortgage, and for judgment against Sunset Shipping *in personam* under the mortgage held by BOA. BOA made defendants in this suit the Vessel, *in rem*, and Sunset Shipping, *in personam*.

7. Upon information and belief, the Vessel will be sold at auction to satisfy a judgment of this Court and all existing liens will be satisfied out of the proceeds of the judgment

8. AMS is the time charterer of the Vessel pursuant to a time Charter Party dated 15 March 2018 entered into with the registered owners of the Vessel, Sunset Shipping (the "Charter

Party"). The Charter Party is governed by English law and provides for arbitration in London.

9. The Charter Party (on which Charterers rely for its full terms and effects) contained the following relevant provisions:

> Line 16      "Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter…
>
> Clause 3      That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel…
>
> Clause 18      Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be repaid at once…
>
> Clause 54      Should the vessel be arrested during the currency of this charter Party at the suit of any person having or purporting to have a claim against of any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period during which the vessel is not fully at Charterers' disposal and any expenses directly related to the vessel shall be for Owners' account…"

10. Sunset Shipping allegedly failed to pay their mortgage installments and the mortgagee bank, BOA, arrested the Vessel at New Orleans on or around 18 March 2021. The Vessel remains under arrest in New Orleans.

11. Prior to the Vessel's arrest, AMS entered into a Sub-Charter Party dated 11 March 2021 (the "Sub-Charter Party"). As a result of the Sunset Shipping's actions and inactions, AMS was not able to deliver the Vessel to the Sub-Charterers before the cancelling date.

Sub-Charterers subsequently cancelled the Sub-Charter Party and have alleged that AMS is in breach of its Sub-Charter Party obligations.

12. AMS has suffered a physical loss of use of the Vessel due to Sunset Shipping's failure to pay its mortgage obligations. As a direct and proximate result of Sunset Shipping's actions and inactions, AMS has not been provided with the intended use of the Vessel as contemplated by the Charter Party, and Sunset Shipping has thus failed to satisfy its contractual obligations to AMS.

13. As a direct and proximate result of Sunset Shipping's actions and inactions, AMS has further suffered economic losses from the cancellation of the Sub-Charter Party.

14. As a direct and proximate result of Sunset Shipping's actions and inactions, AMS have up to date incurred the flowing loss and/or damages:

    (a) Loss of profit under the Sub-Charter Party – $2,910,357.90.

    This figure is calculated by subtracting the net hire payable by AMS under the Charter Party (being $7,940.63/day) from the net hire that AMS would have earned had the Sub-Charter Party been performed (being $17,806.25/day) and then multiplying that figure by the duration of the Sub-Charter Party (being 295 days).

    (b) Value of bunkers on board at the time of completion of discharge - $274,764.80.

    At the time of completion of discharge, the Vessel had 483.20MT LSFO and 77.20MT LSMGO onboard. Sunset Shipping is required to pay for those bunkers at the price of $483/MT for LSFO and $536/MT for LSMGO, being the price paid for bunkers at the Vessel's last bunkering port, being Gibraltar.

(c) Overpaid hire and CVE paid to Sunset Shipping - $ 84,421.16.

Notwithstanding that, pursuant to clause 54 of the Charter Party, the Vessel was off-hire following completion of discharge on 27 March 2021, AMS paid hire and CVE to Sunset Shipping in advance up to 00:01hrs on 7 August 2021.

Pursuant to clause 18 of the Charter Party, AMS is entitled to reimbursement of overpaid hire and CVE for approximately 10.6 days.

(d) Pilotage fees incurred in connection with the Vessel's arrest - $5,307.12.

These expenses are for Sunset Shipping's account pursuant to clause 54 of the Charter Party.

(e) As the arrest is ongoing, AMS reserves the right to claim further sums from Sunset.

(f) Further, AMS anticipated that claims will be brought against it by Sub-Charterers in respect to the cancelled Sub-Charter Party and the inability for AMS to deliver the Vessel to Sub-Charterers within the cancelling date, which Sub-Charterers allege constitutes repudiatory breach of the Sub-Charter Party. AMS' liability to Sub-Charterers arises exclusively from Sunset Shipping's breaches identified above, and AMS seeks a declaration that Owners are obliged to pay damages to Charterers in like amount to any and all sums for which Charterers are held liable to Sub-Charterers pursuant to any Award or Judgment and/or settlement agreement concluded between Charterers and Sub-Charterers in respect of the cancellation and/or alleged repudiatory breach of the Sub-Charter Party (including but not limited to interest and

5

       costs). For the avoidance of doubt, no such sums have been paid however Charterers should be entitled to an indemnity in respect of any amounts eventually paid to Sub-Charterers. (For the avoidance of doubt, no such sums have been paid however Charterers should be entitled to an indemnity in respect of any amounts eventually paid to Sub-Charterers).

15. AMS has initiated arbitration proceedings in London against Sunset Shipping.

**COUNT 1 – BREACH OF MARITIME CONTRACT (against Defendant Sunset Shipping)**

16. AMS incorporates and reasserts the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

17. AMS brings this claim *in personam* against defendant Sunset Shipping, as more fully set out above, because Sunset Shipping acquired and breached a maritime contract with AMS, specifically the Charter Party dated 15 March 2018.

18. AMS has performed its obligations under the contract. Sunset Shipping, on the other hand, has failed to comply with the terms of the agreement by not providing a Vessel fit for its intended use.

19. As a direct and proximate cause of Sunset Shipping's breach of maritime contract, Sunset Shipping has suffered, and continues to suffer, economic damages as identified above in paragraphs 14(a)-(f).

20. AMS has and will incur reasonable attorney's fees and costs by reason of the breaches of the maritime contract, plus interest, plus costs, and in further amounts not presently known to the Plaintiff-Intervenor.

21. AMS is entitled to tort and/or contractual indemnity and/or contribution from Sunset Shipping, *in personam*, should Sub-Charterers establish AMS to be liable for any damages sustained buy Sub-Charterers;

22. AMS reserves all rights to amend and supplement further particulars of Sunset Shipping's breaches following full disclosure.

## COUNT 2 – FORECLOSURE OF LIEN (against Defendant M/V MARINE PRINCESS and her engines, boilers, tackle, equipment, apparel, appurtenances)

23. AMS incorporates and the allegations contained in Paragraphs 1 through 22 as if fully set forth herein.

24. AMS brings this claim *in rem* against defendant Vessel M/V MARINE PRINCESS and her engines, boilers, tackle, equipment, apparel, appurtenances, as more fully set out above, because the failure of Sunset Shipping to fulfill its obligations as set forth in the Charter Party dated 15 March 2018 constitutes a breach of maritime contract, which gives rise to a maritime lien on the Vessel and entitles Plaintiff-Intervenor to foreclose on its maritime lien against the Vessel. *Rainbow Line, Inc. v. M/V Tequila*, S.D.N.Y.1972, 341 F.Supp. 459, *affirmed* 480 F.2d 1024; *Bank One, Louisiana N.A. v. MR. DEAN MV*, 293 F.3d 830, 834 (5th Cir. 2002).

25. AMS is entitled to judgment *in rem* against the Vessel, and the arrest thereof under Supplemental Rule C of the Federal Rules of Civil Procedure, to satisfy the above-described maritime lien.

26. AMS is entitled to tort and/or contractual indemnity and/or contribution from the Vessel, *in rem*, should Sub-Charterers establish AMS to be liable for any damages sustained buy Sub-Charterers;

27. AMS agrees to hold harmless and indemnify the U.S. Marshal and all his deputies from any liability as a result of seizing the Vessel.

WHEREFORE, PREMISES CONSIDERED, AMS Ameropa Marketing & Sales AG respectfully demands judgment in its favor and against Sunset Shipping, *in personam*, and the Vessel, *in rem*, and prays as follows:

   a. That process of arrest, in due form of law, according to the course and practice of this Honorable Court in causes of Admiralty and Maritime Jurisdiction within the meaning of the Constitution of the United States and Rule 9(h) of the Federal Rules of Civil Procedure, may issue against the Vessel M/V MARINE PRINCESS her engines, boilers, tackle, equipment, apparel, and all other necessaries and equipment belonging and appurtenant thereto, as provided in Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, and that all persons claiming any interest in the Vessel may be cited to appear and answer the matters aforesaid, and that the Vessel, her engines, boilers, tackle, equipment, apparel, and all other necessaries belonging and appurtenant thereto, may be seized, condemned, and sold to pay the demands and claims of AMS, with interest, costs, and attorneys' fees, and to pay other amounts required to be paid by Sunset Shipping to AMS under the Charter Party, together with interest, costs, and attorneys' fees;

   b. That process according to the practice of this Court be issued against all parties;

   c. That Plaintiff-Intervenor have a judgment against Sunset Shipping *in personam* for damages to be proven at trial but not less than the economic damages as identified above in paragraphs 14(a)-(f) owing by the defendant, Sunset Shipping plus pre- and

post-judgment interest, contractual fees, attorneys' fees, and costs thereon as allowed by contract and by law;

d. That the Court hold that Plaintiff-Intervenor holds a valid maritime lien against defendant Vessel M/V MARINE PRINCESS and its engines, appurtenances, furnishings, machinery and equipment as provided by law;

e. That Plaintiff-Intervenor have judgment *in rem* against defendant Vessel M/V MARINE PRINCESS, including, without limitation, all of her engines, boilers, tackle, equipment, apparel, and all other equipment and appurtenances appertaining or belonging to the Vessel, whether on board or not, to be proven at trial but not less than the economic damages as identified above in paragraphs 14(a)-(f) owing by the defendant Vessel, plus pre and post-judgment interest, contractual fees, attorneys' fees, and costs thereon as allowed by contract and by law;

f. That Plaintiff-Intervenor have pre and post-judgment interest and such other and further relief as may be just and proper;

g. That this Court maintain jurisdiction over this matter through the entry of judgment or award for any current claims or those which may arise in the future, including any appeals;

h. That Sunset Shipping, *in personam*, and the Vessel, *in rem*, be held liable to AMS under the theories of tort and/or contractual indemnity and/or contribution should Sub-Charterers establish AMS to be liable for any damages sustained buy Sub-Charterers;

i. That this Court declare that Sunset Shipping is obliged to pay damages to AMS in like amount to any and all sums for which AMS is held liable to Sub-Charterers

    pursuant to any award or judgment and/or settlement agreement concluded between AMS and Sub-Charterers in respect of the cancellation and/or alleged repudiatory breach of the Sub-Charter Party (including but not limited to interest and costs).

j. That the Court hold that at the sale of defendant Vessel M/V MARINE PRINCESS, Plaintiff-Intervenor may credit bid without cash deposit the amount due and owing up to the full amount thereof;

k. That judgment be issued against defendant Vessel M/V MARINE PRINCESS and defendant Sunset Shipping, jointly and severally, in the full amount due, plus interest, tighter with charges, costs, and attorney's fees; and

l. The Court grant such other legal and equitable relief as this Court deems just and proper.

    Respectfully submitted,

*/s/ Fredric B. Eisenstat*
Jason P. Waguespack, (#21123)
Fredric B. Eisenstat (#35472)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone: (504) 525-6802
Telecopier: (504) 525-2456
jwaguespack@gallowaylawfirm.com
reisenstat@gallowaylawfirm.com
Attorneys for *AMS Ameropa Marketing & Sales AG*