**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BANK OF AMERICA, N.A.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-559** |
| **M/V MARINE PRINCESS et al.** | **SECTION: "G"** |

**ORDER AND REASONS**

Before the Court is Plaintiff Bank of America, N.A.'s ("Plaintiff") "Motion for Interlocutory Sale of Vessel."[1] In the motion, Plaintiff moves the Court to order an interlocutory sale of the *M/V Marine Princess* (the "Vessel") under Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure. The owner of the Vessel, Defendant Sunset Shipping Ltd. ("Owner"), does not oppose the motion.[2] However, Intervenor AMS Ameropa Marketing & Sales AG ("Intervenor") does oppose the motion.[3] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion and orders an interlocutory sale of the Vessel.

**I. Background**

On March 18, 2021, Plaintiff filed a Complaint in this Court against the Vessel, *in rem*, and its Owner, *in personam*, alleging breach of a preferred ship mortgage and foreclosure of a maritime

---

[1] Rec. Doc. 24.

[2] Rec. Doc. 33 at 1.

[3] Rec. Doc. 31.

lien against the Vessel.[4] The next day, this Court issued a warrant of arrest and the Vessel was arrested.[5] The Vessel has remained under arrest ever since.[6]

On August 19, 2021, Intervenor moved for leave to file a Complaint in Intervention, which this Court granted.[7] In the Complaint in Intervention, Intervenor asserts that it "is the time charterer of the Vessel pursuant to a time Charter Party dated 15 March 2018."[8] Intervenor seeks damages allegedly sustained as a result of breaching a Sub-Charter Party.[9]

Plaintiff filed the instant motion for interlocutory sale of the Vessel.[10] Owner filed a response consenting to the motion but proposing edits to the draft order of sale.[11] Intervenor opposed the motion.[12] Plaintiff filed a reply to Intervenor's opposition.[13] Owner then filed another response proposing an additional edit to the draft order of sale.[14] Plaintiff filed an additional reply in response to Owner's additional proposed amendment.[15]

---

[4] Rec. Doc. 1.

[5] Rec. Docs. 4, 7, 10.

[6] *See* Rec. Doc. 24-1 at 2.

[7] Rec. Docs. 18, 27.

[8] Rec. Doc. 28 at 2.

[9] *Id.* at 3–4.

[10] Rec. Doc. 24.

[11] Rec. Doc. 33.

[12] Rec. Doc. 31.

[13] Rec. Doc. 36.

[14] Rec. Doc. 43.

[15] Rec. Doc. 51.

## II. Parties' Arguments

### *A. Plaintiff's Arguments in Support of the Motion*

In the motion, Plaintiff moves the Court to order the interlocutory sale of the Vessel under Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules").[16] Although the Fifth Circuit requires that only one of the three criteria in Rule E(9) be met, Plaintiff asserts that "[a]ll three have been met in this case."[17] First, Plaintiff asserts that Owner has unreasonably delayed in securing the release of the Vessel.[18] Moreover, Plaintiff avers that Owner has not "state[d] it will even attempt to secure the Vessel's release."[19] Second, Plaintiff alleges that "the expense of keeping the Vessel in custody is excessive."[20] Plaintiff asserts that it "has incurred well over $170,000 in custodial costs" since the arrest of the Vessel in March 2021.[21] Last, Plaintiff avers that "the Vessel is subject to deterioration" while idle and "requires regular maintenance of her hull and machinery."[22] Thus, Plaintiff moves the Court to order the sale of the Vessel under Supplemental Rule E(9).

Additionally, Plaintiff requests that "it be permitted to bid on credit up to the sum owed by

---

[16] Rec. Doc. 24-1 at 1.

[17] *Id.* at 3 (citing *Merchs. Nat'l Bank v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981)).

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 4.

Defendants on the Preferred Ship Mortgage."[23]

### *B. Intervenor's Arguments in Opposition to the Motion*

Intervenor opposes the motion.[24] Intervenor argues "that interlocutory sales are not the standard operating procedure."[25] Intervenor contends that Plaintiff "has failed to carry its burden on any of the three elements [of Supplemental Rule E(9)]."[26] First, Intervenor argues that Plaintiff has not shown the Vessel is perishable or subject to deterioration.[27] Intervenor asserts that "idle vessels remain at port all the time without increased incident [of deterioration]."[28] Second, Intervenor argues that Plaintiff has not shown that the expense of keeping the Vessel under arrest is excessive or disproportionate.[29] Intervenor asserts that Plaintiff cites no caselaw to support its assertion that the $170,000 of custodial costs incurred at the time of filing the motion "is excessive or disproportionate to the over $27,000,000 amount [Plaintiff] seeks to recover."[30] Additionally, Intervenor avers that Plaintiff offered no evidence that it has actually incurred custodial costs.[31] Finally, Intervenor argues that Plaintiff has failed to prove that Owner's delay in securing the

---

[23] *Id.*

[24] Rec. Doc. 31.

[25] *Id.* at 2.

[26] *Id.* at 3.

[27] *Id.* (citing *E.N. Visso & Son, Inc. v. One Twenty-Two Foot Surv. Boat*, No. 96-1443, 1996 WL 715505, at *2 (E.D. La. Dec. 11, 1996) (Clement, J.)).

[28] *Id.* at 4.

[29] *Id.* at 5.

[30] *Id.*

[31] *Id.*

release of the Vessel is unreasonable.[32] Accordingly, Intervenor urges the Court to deny the motion.

### *C. Owner's Response to the Motion*

In response, Owner consents to the interlocutory sale of the Vessel, but reserves all of its rights and defenses.[33] However, Owner requests two modifications to Plaintiff's draft order of interlocutory sale.[34] First, Owner notes that the draft order accompanying Plaintiff's motion provides that publication of the notice of sale "must be published at least ten (10) days and the last at least three (3) days before the date of the sale."[35] Owner requests that "ten" be amended to read "fourteen" to comply with the requirements of Local Admiralty Rule 64.6(A).[36]

Second, Owner notes that Plaintiff's draft order requires that an objection to the sale must be accompanied by a deposit of "$250,000.00 to cover custodial costs during the pendency of the objection."[37] Owner asserts that this deposit is "unreasonable, excessive, and not supported by this Court's Local Admiralty Rules."[38] Owner avers that Local Admiralty Rule 64.6(B) requires that an objecting party deposit the "costs of keeping the property pending the court's determination of the opposition."[39] Owner notes that, according to Plaintiff's own motion, the cost of keeping the

---

[32] *Id.* at 5–6.

[33] Rec. Doc. 33 at 1.

[34] *Id.* at 2.

[35] *Id.* (quoting Rec. Doc. 24-2 at 1).

[36] *Id.*

[37] *Id.* (quoting Rec. Doc. 24-2 at 5) (emphasis omitted).

[38] *Id.*

[39] *Id.* at 3 (quoting EDLA Local Admiralty Rule 64.6(B)).

Vessel under arrest is approximately "$27,900.00 – $28,900.00 per month."[40] Owner "submits that any objection to the sale would likely be resolved by the Court in less than one month."[41] Therefore, Owner suggests that Plaintiff's draft order be amended to instead require a deposit of "$28,000 – $29,000."[42]

### *D. Plaintiff's Reply in Further Support of the Motion*

In reply, Plaintiff first notes that Intervenor "stands alone" in opposing the motion.[43] Plaintiff argues that Intervenor opposes the sale merely to "improve its bargaining position."[44] Plaintiff "reiterates that all three grounds for an interlocutory sale under Rule E(9) are met here, and only one is necessary under the rule."[45] Plaintiff avers that other courts have "noted that vessel machinery requires maintenance and steel vessels will deteriorate if not properly chipped and painted."[46] Plaintiff also notes that there is no evidence that the Vessel is receiving "necessary" and "proper" maintenance.[47] Even if it is, Plaintiff argues "there is no guarantee that the financially strapped owner—which is not opposing the sale—will continue to pay maintenance expenses."[48]

Next, Plaintiff argues that the expense of keeping the Vessel under arrest is clearly

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Rec. Doc. 36 at 1.

[44] *Id.* at 2.

[45] *Id.*

[46] *Id.* at 3 (citing *Neptune Orient Lines v. Halla Merch. Marine Co.*, No. 97-3828, 1998 WL 128993, at *6 (E.D. La. Mar. 20, 1998) (Duval, J.) (citing *Merchs. Nat'l Bank*, 488 F. Supp. at 1341)).

[47] *Id.* at 4.

[48] *Id.* (emphasis omitted).

excessive in light of Owner's lack of opposition to the sale.[49] Plaintiff asserts that by not opposing Owner "is essentially conceding that it cannot or will not post security for the [V]essel's release."[50] On that basis, Plaintiff also asserts that the final element—unreasonable delay in securing the release of the Vessel—is met and that "any further delay is pointless and clearly unreasonable."[51]

***E. Owner's Supplemental Response to the Motion***

In its supplemental reply, Owner reiterates that it does not oppose the sale.[52] Owner suggests one additional change to Plaintiff's proposed order.[53] Owner notes that Plaintiff's draft order gives Plaintiff the sole right to retain a broker or brokers to promote the sale of the Vessel.[54] Owner proposes amending the draft order to allow any interested party to retain a broker, with the commission fee going to whichever broker is responsible for bringing the successful bidder to the sale.[55] Owner asserts that this arrangement "is in the interest of all parties to this judicial sale" by "assur[ing] that the [V]essel is proactively marketed to prospective purchasers by as many brokers as possible."[56]

***F. Plaintiff's Response to Owner's Supplemental Response to the Motion***

In further response, Plaintiff agrees to Owner's proposed change amending the draft order

---

[49] *Id.*

[50] *Id.*

[51] *Id.* at 5.

[52] Rec. Doc. 43 at 1.

[53] *Id.* at 2.

[54] *Id.* (citing Rec. Doc. 24-2 at 3).

[55] *Id.* at 2–3.

[56] *Id.* at 2.

to provide that the first publication of the notice of sale be made fourteen days before the sale.[57] As to Owner's second proposed edit—lowering the deposit required to file objections to the sale—Plaintiff agrees that a lower deposit is appropriate.[58] However, because the deposit is intended to cover the custodial costs while the Court rules on any objection, Plaintiff suggests a deposit amount "marginally higher such as $40,000."[59]

Plaintiff opposes Owner's final proposed edit—amending the draft order to permit multiple brokers.[60] Plaintiff asserts that multiple brokers "will introduce uncertainty and will likely give rise to disputes, ultimately causing confusion and delay."[61] Plaintiff contends that multiple brokers will lead to disputes over which broker in fact secured a successful bid at the sale.[62] Plaintiff argues that Owner's proposed solution is inadequate and leaves open many logistical questions that the Court will have to decide.[63] Plaintiff asserts that any dispute may delay the proceedings further and result in additional, unnecessary custodial expenses.[64] Therefore, Plaintiff requests that the Court deny Owner's request to allow multiple brokers.[65]

---

[57] Rec. Doc. 47 at 2.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 3.

[61] *Id.* at 3–4.

[62] *Id.* at 4.

[63] *Id.* at 5.

[64] *Id.*

[65] *Id.* at 6.

### *G. Owner's Further Response to Plaintiff's Motion*

In further response, Owner contends that multiple brokers will benefit all parties by increasing interest in the sale and "almost assuredly" increasing the price of the Vessel.[66] Owner notes that the procedure for conducting sales of Vessels is not fixed by statute.[67] Therefore, Owner asserts that the Court "has the discretion to determine the parameters of the interlocutory sale of the [V]essel."[68] However, Owner contends that "[t]he court must . . . consider . . . the purpose of the judicial sale, which is to benefit both creditors and debtors."[69] Owner argues that Plaintiff's argument that multiple brokers "will likely give rise to disputes" is "hollow" since Plaintiff's draft order reserves its right to appoint multiple brokers.[70] Owner assures the Court that any disputes that may arise "can be dealt with by the Court without affecting the disposition of the sales proceeds to creditors or release of the [V]essel to the buyer."[71] Thus, Owner requests that the Court permit "at least two brokers (one representing [Plaintiff] and one representing [Owner]) in order to achieve a "fair and equitable" sale.[72]

## **III. Law and Analysis**

Plaintiff moves the Court to order an interlocutory sale of the Vessel under Supplemental

---

[66] Rec. Doc. 51 at 2.

[67] *Id.* at 1.

[68] *Id.* (citing *E.N. Bisso & Son, Inc.*, 2020 WL 1689875, at *2).

[69] *Id.* at 1–2 (quoting *First Nat'l Bank of Jefferson Par. v. M/V Lightning Power*, 776 F.2d 1258, 1261 (5th Cir. 1985)).

[70] *Id.* at 2 (quoting Rec. Doc. 47 at 3–4).

[71] *Id.* at 3.

[72] *Id.* at 4.

Admiralty Rule E(9).[73] Owner does not oppose the sale, although Intervenor does.[74] Instead, Owner objects to Plaintiff's draft order because it gives the exclusive right to appoint a broker to Plaintiff.[75] Owner requests that the Court modify Plaintiff's draft order to permit any party to appoint a broker.[76]

First, the Court must determine if an interlocutory sale is appropriate. Supplemental Admiralty Rule E(9) permits a court to order the sale of a vessel under arrest if:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.[77]

"In order to prevail, the lienors need only show one of the three criteria."[78] The movant bears the burden of demonstrating at least one of the criteria is met.[79] Even if a movant satisfies this burden, the decision to order sale of a vessel is ultimately in the district court's sound discretion.[80]

Here, the Court finds that Plaintiff has satisfied the criteria of Supplemental Rule E(9). Specifically, the Court finds that there has been "an unreasonable delay in securing release of the

---

[73] Rec. Doc. 24.

[74] Rec. Docs. 31, 33.

[75] Rec. Doc. 43.

[76] *Id.*

[77] Fed. R. Civ. P. Supp. E(9)(a)(i).

[78] *Merchs. Nat'l Bank*, 663 F.2d at 1341.

[79] *Triton Container Intern. Ltd. v. Baltic Shipping Co.*, No. 95-427, 1995 WL 217483, at *2 (E.D. La. Apr. 12, 1995).

[80] *Id.* (noting "the Rule, by using the word 'may,' clearly indicates that ordering the sale is not mandatory."). *See also United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) ("Because the rule does not state any criteria to guide the judge . . . [the judge] can range widely in deciding what factors to consider. . . . [I]n other words, [the judge] has considerable discretion.").

property."[81] The Vessel at issue in this case was arrested on March 19, 2021 pursuant to an Order of this Court.[82] The Vessel has remained under arrest since that date. Owner has taken no action to post security in order to secure the release of the Vessel. Indeed, by not opposing the motion for interlocutory sale, Owner effectively admits that it does not intend to secure the release of the Vessel. Thus, the Vessel has been under arrest for nine months, and seemingly will remain under arrest until trial in June 2022.[83] Therefore, the Court finds that this delay is unreasonable and that an interlocutory sale of the Vessel is appropriate.

Additionally, the Court finds Intervenor's arguments in opposition unpersuasive. Intervenor cites a treatise from 1975 for the proposition that "interlocutory sales are not the standard operating procedure."[84] Yet the Supplemental Rules for Admiralty Claims of the Federal Rules of Civil Procedure were adopted in 1966 to provide for precisely this type of sale.[85] As to the reasonableness of Owner's delay in securing the release of the Vessel, Intervenor argues that Plaintiff "offers no citation to any authority to support[] its position that the delay in this case is unreasonable."[86] However, Owner consents to the sale of the Vessel.[87] In so consenting, Owner effectively indicates that it does not intend to post security to secure the release of the Vessel. Therefore, any further delay in ordering the sale of the Vessel will be unreasonable, because Owner

---

[81] Fed. R. Civ. P. Supp. E(9)(a)(i).

[82] Rec. Docs. 10, 14. *See also* Rec. Doc. 24-1 at 2.

[83] *See* Rec. Doc. 40.

[84] Rec. Doc. 31 at 2 (citing G. Gilmore & C. Black, *The Law of Admiralty* 787 (2d ed. 1975).

[85] *See* Fed. R. Civ. P. Supp. E.

[86] Rec. Doc. 31 at 5. The Court does not address Intervenor's other arguments in opposition, because Plaintiff need only satisfy one element of Supplemental Rule E. *Triton Container Intern. Ltd.*, 1995 WL 217483, at *2.

[87] Rec. Doc. 33.

does not plan to ever secure the release of the Vessel. Accordingly, the Court will grant Plaintiff's motion for interlocutory sale of the Vessel.

Next, the Court considers Owner's proposed modifications to Plaintiff's draft order of interlocutory sale. Owner lodged three objections to Plaintiff's draft order.[88] Plaintiff agrees to Owner's first modification to provide that the first notice of sale must be published at fourteen days before the date of the sale.[89] Accordingly, the Court adopts this modification.

Plaintiff also agrees to Owner's second modification—to lower the deposit amount required to lodge an objection to the sale—but proposes a slightly higher amount of $40,000.[90] The purpose of the deposit is to cover the custodial expenses of detaining the Vessel while the Court rules on any objection to the sale. The Court agrees with Plaintiff that a slightly higher deposit of $40,000 is appropriate to ensure that custodial expenses are covered while the Court rules on any objections. Therefore, the Court will modify the draft order accordingly.

Finally, Owner proposes that Plaintiff's draft order be modified to permit multiple brokers.[91] Plaintiff opposes this modification, arguing that multiple brokers will cause confusion, complication, and delay.[92] Owner disputes that multiple brokers will cause delay and contends that multiple brokers will achieve the most "fair and equitable" sale.[93] As the parties each agree, the procedure for conducting an interlocutory sale is not prescribed by statute. Additionally, at a status

---

[88] Rec. Docs. 33, 43.

[89] Rec. Doc. 47 at 2.

[90] *Id.*

[91] Rec. Doc. 43 at 3.

[92] Rec. Doc. 47 at 3–5.

[93] Rec. Doc. 51 at 4.

conference with the Court, the parties explained that they were working on a compromise to select a mutually agreeable broker.[94] The parties agreed to submit the name of a mutually agreeable broker to the Court by Monday, January 4, 2022 at 12:00 PM. If, by that time, the parties have not agreed on a broker, the parties will submit a list of brokers to the Court, and the Court will select a broker at random.

## V. Conclusion

For the reasons set forth above, accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Bank of America, N.A.'s "Motion for Interlocutory Sale of Vessel"[95] is **GRANTED**. A separate order will issue setting the conditions of the sale.

**IT IS FURTHER ORDERED** that Plaintiff and Defendants will submit a broker to the Court by Monday, January 3, 2022 at 12:00 PM. If they cannot agree on a broker, they will submit a list of brokers to the Court and the Court will select a broker at random.

**NEW ORLEANS, LOUISIANA**, this 29th day of December, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

[94] *See* Rec. Docs. 52, 53.

[95] Rec. Doc. 65.